UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN CRUMLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>　　　　Defendants. | Case No. 5:17-cv-07144-HRL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH LEAVE TO AMEND AS TO SOME CLAIMS**<br><br>Re: Dkt. No. 9 |

　　　　In this mortgage/foreclosure case, plaintiff Kevin Crumley sues for alleged violations of California law. The matter was removed here on the basis of the court's diversity jurisdiction, 28 U.S.C. § 1332. Defendants Wells Fargo Bank, N.A. (Wells Fargo) and U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR10 (US Bank) now move to dismiss the complaint in its entirety. The matter was deemed suitable for determination upon the papers without oral argument. Civ. L.R. 7-1(b). Upon consideration of the moving and responding papers,[1] as well as the arguments of counsel, the court

---

[1] In resolving this motion, the court found it unnecessary to refer to documents submitted by defendants for judicial notice, since copies of those documents are already appended to the complaint. Defendants' request for judicial notice therefore is denied as moot.

grants the motion, with leave to amend only as to some claims.[2]

**BACKGROUND**

The facts, as alleged in plaintiff's complaint, are as follows:

In February 2004, Crumley obtained a home loan from Wells Fargo Home Mortgage, Inc. for $395,000, secured by real property at 204 Highland Drive in Aptos, California.

In the Fall of 2011, plaintiff contacted Wells Fargo to request assistance with his mortgage, but was told that he was not eligible for assistance because he was not behind in his payments.

In May 2012, after missing several monthly mortgage payments, Crumley contacted Wells Fargo to again ask for mortgage assistance. Wells Fargo sent him a letter identifying foreclosure prevention options, along with an application for a loan modification, which plaintiff says he promptly submitted.

On July 6, 2012, a Corporate Assignment of Deed of Trust (DOT) was recorded on the subject property, reflecting an assignment of the DOT from Wells Fargo Home Mortgage, Inc. to US Bank.

On July 10, 2012, Wells Fargo sent Crumley a letter advising that his loan modification application was denied because US Bank declined to modify the mortgage.

Months later in September 2012, plaintiff filed for bankruptcy. Crumley says that throughout the bankruptcy proceedings, he remained current on his mortgage payments.

Several years later, in April 2016, plaintiff submitted a second loan modification application to Wells Fargo. That application was denied in November 2016. Crumley alleges that the denial was made on "several inaccurate grounds, including, *inter alia,* that Plaintiff had too much equity in his home and an inaccurate analysis of the net present value of the Subject Property." (Dkt. 1-1, Complaint ¶ 33).

Crumley's bankruptcy was discharged in February 2017. Plaintiff says he then contacted Wells Fargo to request a loan modification, but was again told that he was ineligible because he was not behind on his payments.

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

On May 17, 2017, defendant Quality Loan Service (QLS) recorded a Notice of Default, along with a declaration of compliance with California Civil Code § 2923.55(b)(2), confirming that the mortgage servicer contacted Crumley to assess his financial situation and to explore options to avoid foreclosure. Plaintiff alleges that the declaration of compliance is false because it suggests that Wells Fargo contacted him, when he says he is the one who contacted Wells Fargo. Additionally, Crumley says that "the declarant is not a representative of Defendant US Bank---the servicer of Plaintiff's loan, and the assignee of the DOT---but rather an employee of Wells Fargo Bank, N.A.---the prior servicer of the loan." (Complaint ¶ 32).

On August 17, 2017, QLS recorded a Notice of Trustee's Sale, setting a sale date of September 19, 2017. The sale did not go forward on that date, and all indications are that plaintiff is still in possession of the property. Crumley filed this lawsuit in November 15, 2017. His complaint alleges nine claims for relief: (1) violation of California Civil Code § 2923.55; (2) violation of California Civil Code § 2923.6; (3) violation of California Civil Code § 2923.7; (4) violation of California Civil Code § 2924.12; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) negligence; (8) negligent infliction of emotional distress; and (9) unfair business practices, California Business and Professions Code § 17200.

Wells Fargo and US Bank contend that the complaint must be dismissed because it fails to state a viable claim for relief. For the reasons to be discussed, the court grants their motion, with leave to amend only as to plaintiff's claims under California Civil Code §§ 2923.7 and 2924.12 and Cal. Bus. & Prof. Code § 17200. Defendants' motion is otherwise granted as to all other claims for relief without leave to amend.

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. Id.

3

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S. Ct. at 1950. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile. Rivera v. BAC Home Loans Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996)).

**DISCUSSION**

**A.   Cal. Civ. Code § 2923.55[3]**

Section 2923.55(b)(2), a part the Homeowner's Bill of Rights (HBOR), provides in relevant part, that before recording a notice of default, "[a] mortgage servicer shall contact the

---

[3] Although Section 2923.55 has been repealed as of January 1, 2018, plaintiff sues for alleged conduct that occurred prior to the expiration of the statute.

4

borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Defendants argue that Crumley's own allegations undermine his claim because he admits receiving at least two full loan modification reviews before the notice of default was recorded in May 2017---his first application having been denied in July 2012, and the second in November 2016. Indeed, courts have held "that a section 2923(b)(2) claim fails where the plaintiff mortgagor and the defendant mortgage servicer had been in communication regarding a loan modification before a notice of default was recorded." Green v. Central Mortgage Co., 148 F. Supp.3d 852, 871 (N.D. Cal. 2015); see also Aguirre v. Wells Fargo Bank, N.A., No. CV 15-1816-GHK (MRWx), 2015 WL 4065245, at *4 (C.D. Cal., July 2, 2015) ("Several courts have found that the pre-foreclosure notice requirements imposed by HBOR are generally satisfied so long as there has been an effort 'to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure'") (quoting Cal. Civ. Code § 2923.55(b)(2)); Johnson v. SunTrust Mortgage, Inc., No. CV 14-2658 DSF (PJWx), 2014 WL 3845205, at *4 (C.D. Cal., Aug. 4, 2014) ("Although Plaintiffs were not satisfied with the result of their modification applications or with the information they received from SunTrust, this provision only 'contemplates contact and some analysis of the borrower's financial situation.'") (quoting Davenport v. Litton Loan Servicing, LP, 725 F.Supp.2d 862, 877 (N.D. Cal. 2010)).

Crumley contends that the prior communications with Wells Fargo don't count because he was the one who initiated those discussions, not vice versa. However, he offers no authority for such an interpretation of the statute. And, although he claims that he "clearly alleged that Defendants did not contact him to discuss his financial situation and possible alternatives to foreclosure prior to recording the Notice of Default and Notice of Trustee's Sale" (Dkt. 13, Opp. at 3), his cited portions of the complaint (¶¶ 31-34) do nothing to help him. The cited paragraphs merely allege the May 17, 2017 recording of the Notice of Default; his April 2016 loan modification application (and the November 2016 denial of that application); and his allegations that he repeatedly told Wells Fargo that he wanted to keep his house for various reasons. To be

sure, the complaint also alleges that "shortly before the September 201[7] foreclosure sale date,"[4] plaintiff spoke with Wells Fargo and said he wanted to keep his home, but was told his application was denied. (Id. ¶ 35). But that allegation concerns an apparent attempt at loan modification only *after* the Notice of Default and Notice of Sale were recorded. Nothing about those allegations refutes the fact that prior to recording the Notice of Default in May 2017, plaintiff had two full loan modification reviews.

Plaintiff's complaint also alleges that the declaration of compliance appended to the May 2017 Notice of Default is "irrelevant and defective" because it was signed by a Wells Fargo representative, rather than by a representative of US Bank, whom he says was the servicer of the loan. (Complaint ¶ 31). As discussed, assignment of the DOT to US Bank was recorded on July 6, 2012. Defendants argue that plaintiff simply assumes that US Bank was the servicer, but that the complaint's allegations indicate otherwise. The court agrees. First, as reflected in the DOT ¶ 20, defendants say that the loan servicer is the one that "collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations . . . ." (Dkt. 1-1 at 33, Complaint, Ex. A). The complaint's allegations acknowledge that all of plaintiff's communications about the loan modification review process were conducted through Wells Fargo. (See, e.g., Complaint ¶¶ 25-30, 33-35). Moreover, defendants contend that an assignment of the DOT is not a de facto assignment of servicing rights. Here, they point out that the DOT ¶ 20 also states: "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." (Dkt. 1-1 at 34, Complaint, Ex. A). Plaintiff fails to address these arguments at all, and thus has conceded the issue. Pecover v. Elec. Arts Inc., 633 F. Supp.2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum . . ..").

---

[4] The complaint refers to a September 201*6* foreclosure sale date---an apparent typographical error given the context of the complaint's allegations as a whole, as well as the August 17, 2017 Notice of Trustee's Sale which identifies the sale date as September 19, 2017. (Dkt. 1-1 at 51, Complaint Ex. D).

6

Because plaintiff acknowledges that he had discussions with Wells Fargo about his financial situation and loan modification options, his § 2923.55(b)(2) claim fails. Plaintiff offers no basis to conclude that the claim can be cured by amendment. Accordingly, defendants' motion to dismiss this claim is granted without leave to amend.

### B.  Cal. Civ. Code § 2923.6[5]

HBOR section 2923.6(c) prohibits recording a notice of default or notice of sale or conducting a foreclosure sale while a borrower's completed application for a loan modification is pending. Section 2923.6(c)(1) provides, in relevant part, that the mortgage servicer, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: "(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired." Crumley's complaint alleges that defendants violated this provision because they "did not make a written determination that Plaintiff was not eligible for a first lien loan modification" (Complaint ¶ 56). As discussed, however, the complaint acknowledges that "[o]n or about July 10, 2012, Wells Fargo sent Plaintiff a letter in response to his application. For the first time, Wells Fargo informed Plaintiff that his loan could not be modified because the investor that owns the loan---i.e. U.S. Bank---has declined the request to modify Plaintiff's mortgage." (Complaint ¶ 26). In his opposition, plaintiff simply recites the language of § 2923.6 and fails to address the substance of defendants' arguments. Nor does he provide any basis to conclude that this claim can be cured on amendment. Accordingly, defendants' motion to dismiss this claim is granted without leave to amend.

### C.  Cal. Civ. Code § 2923.7

HBOR section 2923.7 provides: "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact [SPOC] and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). A SPOC means "an individual or team of

---

[5] Plaintiff apparently sues under a prior version of this statute, in effect through December 31, 2017.

7

personnel each of whom has the ability and authority to perform the responsibilities described in [§ 2923.7(b)-(d)]." Id. § 2923.7(e). The SPOC is responsible for ensuring that the borrower is adequately and timely assisted, including communicating the process for applying for foreclosure prevention alternatives; coordinating the receipt of documents; and timely, accurately, and adequately informing the borrower of the current status of the foreclosure prevention alternative. Id. § 2923.7(b)(1)-(5). The purpose of the SPOC provision is "to prevent borrowers from being given the run-around." Rockridge Trust v. Wells Fargo, N.A., No., 2014 WL 688124, at *23 (N.D. Cal., Feb. 19, 2014) (citation omitted). "In order to properly allege a claim under section 2923.7, a plaintiff must allege that a violation of the provision was the cause of actual economic damages." Id. (citing Cal. Civ. Code § 2924.12(b)). Crumley contends that defendants violated this statute by failing to provide him with an effective SPOC at any time after January 1, 2013. (Complaint ¶ 40).

The parties dispute whether Crumley was required to specifically request a SPOC in order to trigger the obligation to provide him with one. Courts have come to different conclusions on that point. Compare Green, 148 F. Supp.3d at 874 (concluding that a borrower need only request a foreclosure prevention alternative to trigger § 2923.7) with Amer v. Wells Fargo Bank, N.A., No. 17-cv-03872-JCS, 2017 WL 4865564, at *10 (N.D. Cal., Oct. 27, 2017) (dismissing plaintiff's § 2923.7 claim where there was no allegation that the borrower specifically requested a SPOC and observing that several courts in this district have done the same) (citing cases). For purposes of resolving the present motion, the court finds it unnecessary to resolve that issue because plaintiff's § 2923.7 claim fails, in any event, to allege sufficient facts stating a plausible claim for relief.

Crumley alleges that following his default, between July 1 and July 4, 2012, Wells Fargo sent him a series of letters identifying the foreclosure prevention specialist assigned to his loan. (Complaint ¶ 25). Plaintiff further alleges that each letter identified a different individual and that his efforts to speak with any of them was "unavailing." (Id.). Within a week after Crumley says a foreclosure prevention specialist was identified, he was informed that his first loan modification application was denied. (Id. ¶ 26). And, as discussed, plaintiff made a second loan modification request in April 2016, which was denied in November 2016. To the extent Crumley contends that

there were any deficiencies with respect to the identified individuals or his ability to communicate with them, his complaint's allegations are exceedingly vague. As discussed above, a SPOC can be "an individual or team of personnel." Cal. Civ. Code § 2923.7(e). Crumley says that his efforts to communicate were "unavailing," but his allegations suggest that plaintiff simply disagrees with the denial of his request for modification. Plaintiff goes on to allege that Wells Fargo made repeated false assurances that his house would not be sold and that, in phone conversations, various Wells Fargo employees told him that his loan modification application would be approved if he offered to make a $100,000 down payment on arrearages. (Id. ¶ 34). But, he does not allege when this representation was made or that the down payment ever was provided. Plaintiff otherwise alleges, in highly conclusory fashion, that the SPOC defendants provided was either unwilling or unable to help him and was thus "tantamount to not having a [SPOC]." (Id. ¶ 41). And, the remainder of his allegations largely parrot the language of § 2923.7. (Id. ¶ 42). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

Defendants' motion to dismiss this claim is granted, with leave to amend, if plaintiff can truthfully do so in compliance with Fed. R. Civ. P. 11.

### D.     Cal. Civ. Code § 2924.12[6]

Section 2924.12 provides a private right of action for material violations of HBOR statutes, including §§ 2923.55, 2923.6, and 2923.7. Specifically, a plaintiff may recover the following remedies:

> (a) (1)  If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6. 2923.7
>
> ….
>
> (b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7 . . . by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation

---

[6] Plaintiff apparently sues under the version of this statue in effect through December 31, 2017.

of the trustee's deed upon sale.

Cal. Civ. Code § 2924.12. The court having dismissed all of plaintiff's HBOR claims, his § 2924.12 claim is also dismissed. However, because plaintiff is being given leave to amend his § 2923.7 claim, he will also be given leave to amend his § 2924.12 claim.

### E. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing

To state a claim for breach of contract, "a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach." Lyons v. Bank of America, N.A., No. C11-01232 CW, 2011 WL 3607608 at *2 (N.D. Cal., Aug. 15, 2011) (citing Armstrong Petrol. Corp. v. Tri–Valley Oil & Gas Co., 116 Cal.App.4th 1375, 1391 n. 6, 11 Cal.Rptr.3d 412 (2004)). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." Levy v. JP Morgan Chase, No. 10CV1493 DMS (BLM), 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).

Crumley's breach of contract claim alleges that, in the event of his default, Paragraph 22 of the DOT required defendants to give him notice of the default and the lender's intent to accelerate the loan prior to acceleration. (Complaint ¶ 69). Plaintiff claims that defendants failed to give him any acceleration notice or notice to cure after he missed his first payment. (Id. ¶ 70). These facts are also the basis for plaintiff's claim for breach of the covenant of good faith and fair dealing. (Id. ¶¶ 78-79).[7] Defendants argue that the complaint does not state facts supporting a plausible claim for relief. Plaintiff fails to address these arguments at all and therefore appears to have either abandoned or conceded the issue. Pecover, 633 F. Supp.2d at 984. In any event, the court concludes that defendants' arguments are well taken.

Plaintiff alleges that DOT ¶ 22 required defendants to provide him with notice that "shall

---

[7] The complaint's allegations apparently have been cut and paste from an entirely different case in that the dates and amounts of the loan are not the same as those shown in the DOT appended to Crumley's complaint.

10

specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (Complaint ¶ 78). Defendants correctly note that the May 2017 Notice of Default satisfies these requirements:

- The notice specifies the default: $111,539.60 as of 5/16/2017
- The notice states the action required to cure the default: "you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses . . .."
- The notice provides the date by which the default must be cured: "within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property."
- The notice also warns that failure to cure the default may result in acceleration of the loan and sale of the property: "Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor."

(Dkt. 1-1 at 46-47, Complaint Ex. C).

Although plaintiff complains that defendants failed to provide him with an acceleration notice after he missed his first payment, there is no such requirement in DOT ¶ 22. The DOT only requires that an acceleration notice be given "prior to acceleration" and that Crumley be given "a date, not less than 30 days from the date the notice is given to [him], by which the default must be cured." (Id. at 35). As discussed, the May 2017 Notice of Default advises that acceleration may occur if the default is not cured "within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property." (Id. at 46). In California:

Reinstatement of a monetary default under the terms of an obligation

11

> secured by a deed of trust or mortgage may be made at any time within the period *commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale*.

Cal. Civ. Code § 2924c(e) (emphasis added). Here, the Notice of Trustee's Sale sets a sale date of September 19, 2017. (Dkt. 1-1, Complaint Ex. D at 51). Thus, the May 2017 Notice of Default did not violate the DOT ¶ 2 because it was given to Crumley well over five business days before the date first noticed for sale.

In any event, plaintiff fails to show that he suffered harm as a result of any alleged breach. The complaint's allegations indicate that Crumley defaulted on his loan in 2012 in order to obtain a loan modification review. (Complaint ¶¶ 22-24). There is no allegation that he intended to cure his default prior to acceleration. He simply alleges, in highly conclusory fashion, that "[a]s a direct and proximate result of Defendants' breach of their promises made in the DOT, Plaintiff incurred substantial injury, including but not limited to the loss of a permanent modification, back dues and interest that has accrued to date, loss of the opportunity to pursue other foreclosure prevention options, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial." (Id. ¶ 75).

Defendants' motion as to these claims is granted. Having failed to address any of defendants' arguments, plaintiff has not provided any basis to conclude that these claims may be cured by amendment. Accordingly, the claims for breach of contract and the breach of the covenant of good faith and fair dealing are dismissed without leave to amend.

### F. Negligence

Relatedly, plaintiff alleges that defendants were negligent because "under the DOT, Defendants had a specific duty to notify Plaintiff of default, and how to cure it, yet no such notice was sent to Plaintiff following his missed mortgage payment." (Complaint ¶ 86). In his opposition, plaintiff did not address any of defendants' arguments as to this claim and thus appears to have either abandoned or conceded the issue. Pecover, 633 F. Supp.2d at 984. In any event, for the reasons discussed above, plaintiff fails to allege a plausible claim that defendants failed to give him such notice. Accordingly, this claim also fails and it is dismissed without leave to amend.

### G. Negligent Infliction of Emotional Distress

Crumley alleges that "Defendants are negligently moving forward with the non-judicial foreclosure sale of the Subject Property and have negligently refused to give Plaintiff a real opportunity at avoiding foreclosure on his family's home." (Complaint ¶ 92).

Negligent infliction of emotional distress is a tort of negligence. Delk v. Ocwen Fin. Corp., No. 3:17-cv-02769-WHO, 2017 WL 3605219, at *11 (N.D. Cal., Aug. 21, 2017) (citing Spates v. Dameron Hosp. Assn., 114 Cal. App. 4th 208, 213 (2003). To state a claim for negligence, "a plaintiff must show that (i) the defendant had a duty of care to the plaintiff, (ii) the defendant breached the duty of care, and (iii) the plaintiff suffered damages proximately caused by the defendant's breach." Id. (citing Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App.4th 49, 62 (2013)).

Defendants argue that they owed no duty of care to Crumley. The court agrees. "'[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" Delk, 2017 WL 3605219, at *11 (quoting Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096 (1991)). This rule also applies to loan servicers. Id. (citing Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009)). "Moreover, a plaintiff cannot recover under a negligent infliction cause of action when defendant's 'conduct resulted only in injury to property.'" Delk, 2017 WL 3605219, at *11 (quoting Ragland v. U.S. Bank Nat'l Ass'n, 209 Cal. App.4th 182, 205 (2012)).

Nothing about Crumley's allegations suggest that defendants owed a duty based on conduct separate from their usual money-lending or servicing roles. As discussed, according to plaintiff's own allegations, he received two full loan modification reviews. And, the record indicates that the foreclosure sale did not take place and that plaintiff is still in possession of the property. While plaintiff's modification requests were denied, "[t]he general rule is that a financial institution does not owe a borrower a duty not to foreclose if the loan is in default, even if it previously promised not to foreclose, and also does not owe a duty to modify a loan." Nordico v. JPMorgan Chase & Co., No. C12-4891 PJH, 2013 WL 144096, at *1 (N.D. Cal., Jan.

11, 2013) (citing Chanthavong v. Aurora Loan Servs., Inc., No. 2:10-cv-2269-GEB,-JFM, 2011 WL 6012353, at *8 (E.D. Cal., Dec. 1, 2011); Dooms v. Fed. Home Loan Mortg. Corp., No., CV F 11-0352 LJO DLB, 2011 WL 1232989, at *11-12 (E.D. Cal., Mar. 31, 2011)). Plaintiff has alleged no facts suggesting that the general rule should not apply. Indeed, he did not address this issue at all in his opposition and has apparently abandoned or conceded the issue. Pecover, 633 F. Supp.2d at 984.

Defendants' motion to dismiss this claim is granted. Having failed to address defendants' arguments at all, plaintiff has not provided any basis to conclude that this claim could be cured on amendment. Accordingly, the claim for negligent infliction of emotional distress is granted without leave to amend.

### H. Cal. Bus. & Prof. Code § 17200

Although "[v]iolation of almost any federal, state, or local law may serve as the basis for a UCL claim," Plascencia v. Lending 1st Mortgage, 259 F.R.D. 437, 448 (N.D. Cal. 2009), plaintiff's § 17200 necessarily rises or falls with his other claims for relief. Because defendants' motion to dismiss is granted with leave to amend as to the Cal. Civil Code §§ 2923.7 and 2924.12 claims, plaintiff's § 17200 claim is also dismissed with leave to amend.

**ORDER**

Based on the foregoing, defendants' motion to dismiss is:

- GRANTED WITHOUT LEAVE TO AMEND as to plaintiff's claims under Cal. Civ. Code §§ 2923.55 and 2923.6 and for breach of contract, breach of the covenant of good faith and fair dealing, negligence, and negligent infliction of emotional distress;
- GRANTED WITH LEAVE TO AMEND as to plaintiff's claims under Cal. Civ. Code § 2923.7 and 2924.12 and Cal. Bus. & Prof. Code § 17200.

If plaintiff chooses to amend his complaint, his amended pleading shall be filed within 14 days from the date of this order. Leave to amend is limited to those claims pled in the complaint and consistent with the rulings above. To the extent plaintiff intends to assert new or different claims for relief or add new parties, he must make an appropriate application pursuant to Fed. R.

Civ. P. 15. Failure to comply with this order may result in sanctions.

SO ORDERED.

Dated: February 20, 2018

_____
HOWARD R. LLOYD
United States Magistrate Judge