UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KEVIN CRUMLEY, <br> Plaintiff, <br> v. <br> U.S. BANK NATIONAL ASSOCIATION, et al., <br> Defendants. | Case No.17-cv-07144-VKD <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** <br><br> Re: Dkt. No. 47 |

Plaintiff Kevin Crumley sues for alleged violations of California law in connection with his home mortgage loan for property located in Aptos, California ("Property").[1] His original complaint alleged that defendants failed to adequately explore foreclosure avoidance options in violation of the California Homeowners Bill of Rights ("HBOR") and asserted the following nine claims for relief: (1) violation of HBOR, Cal. Civ. Code § 2923.55; (2) violation of HBOR, Cal. Civ. Code § 2923.6; (3) violation of HBOR, Cal. Civ. Code § 2923.7; (4) violation of HBOR, Cal. Civ. Code § 2924.12; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; (7) negligence; (8) negligent infliction of emotional distress; and (9) unfair business practices, Cal. Bus. & Prof. Code § 17200.

After Mr. Crumley filed this suit in state court, defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank National Association ("U.S. Bank")[2] removed the matter here,

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] U.S. Bank is sued as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2005-AR10.

invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332.[3] The Court subsequently granted Wells Fargo and U.S. Bank's Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint. Mr. Crumley was given leave to amend only as to three claims: HBOR, Cal. Civ. Code § 2923.7; HBOR, Cal. Civ. Code § 2924.12; and Cal. Bus. & Prof. Code § 17200.

Mr. Crumley filed his First Amended Complaint ("FAC"), asserting the three claims for which he was given leave to amend. Wells Fargo subsequently moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the FAC did not state a viable claim under HBOR, Cal. Civ. Code § 2923.7. Because the remaining two claims for relief depended upon Mr. Crumley's § 2923.7 claim, Wells Fargo contended that the entire FAC must be dismissed.[4]

In his opposition to that motion, Mr. Crumley focused on additional facts and entirely new claims for relief that he wanted to include in a Second Amended Complaint ("SAC"). Dkt. No. 31. Then, late on the eve of the hearing noticed for Wells Fargo's motion to dismiss, Mr. Crumley filed an improperly noticed motion for leave to file an SAC, which he acknowledged was not brought in compliance with the Court's rules.

Even leaving aside these procedural improprieties, Wells Fargo argued that the additional facts asserted in Mr. Crumley's papers failed to state a claim for relief. Most notably, Wells Fargo contended that his § 2923.7 claim was time-barred. In addition, Mr. Crumley acknowledged that because the HBOR, which took effect on January 1, 2013, does not apply retroactively, the many allegations in the FAC that referred to events dating back to 2012 did not support a claim for relief under § 2923.7.

The Court struck Mr. Crumley's improper motion for leave to amend and supporting declarations and granted Wells Fargo's motion to dismiss the FAC for failure to state a claim for relief. Nevertheless, the Court, in its discretion, gave Mr. Crumley permission to file a properly noticed motion for leave to file an SAC to include the additional facts and new claims he

---

[3] Defendant Quality Loan Service Corporation ("QLS") is the alleged foreclosure trustee. Although QLS consented to the removal of this action, and also consented to proceed before a magistrate judge, it has not been actively participating in these proceedings.

[4] U.S. Bank did not join in that motion, presumably because the claims asserted in Mr. Crumley's FAC appeared to implicate only Wells Fargo.

2

identified. In doing so, the Court noted that this would be Mr. Crumley's third attempt to state a claim for relief, and it further expressed concerns about the statute of limitations issue raised by Wells Fargo. Accordingly, Mr. Crumley was permitted to seek leave to file an SAC as follows: With respect to the HBOR § 2923.7 and § 2924.12 claims and the Cal. Bus. & Prof. Code § 17200 claim, Mr. Crumley was given leave to amend them in an SAC, so long as he could do so consistent with Fed. R. Civ. P. 11. Similarly, Mr. Crumley was given leave to seek to file an SAC that included additional claims for Accounting Errors, Intentional Misrepresentation, and Negligent Misrepresentation, so long as he could do so consistent with Fed. R. Civ. P. 11. Noting that it expected to address all of Mr. Crumley's desired amendments in a single round of motions practice, the Court directed U.S. Bank and Wells Fargo to assert in their opposition papers all bases for a challenge to all claims Mr. Crumley would seek to include in an SAC. Dkt. No. 46.

The Court thus made it clear that in granting Mr. Crumley leave to seek permission to file an SAC, it was giving him an opportunity to explain why he should be allowed to amend his claims yet again. For the reasons to be discussed, Mr. Crumley's present motion for leave to file an SAC is utterly inadequate for that purpose. His opening brief does not discuss any particular claims and consists mostly of boilerplate language reciting that leave to amend should be freely granted and that defendants would not be prejudiced. Dkt. No. 47. Moreover, Mr. Crumley fails to address defendants' arguments about his proposed HBOR claims. Instead, for the first time in his reply papers, Mr. Crumley indicates that he intends to dismiss those claims and to proceed with completely different ones under the Real Estate Settlement Procedures Act ("RESPA").[5] Dkt. No. 49. Those newly identified RESPA claims appear nowhere in Mr. Crumley's proposed SAC, and the Court did not authorize a motion for leave to assert them.

As for the merits of Mr. Crumley's proposed SAC, at the August 14, 2018 motion hearing the Court explained its preliminary view, based on the papers, that Mr. Crumley still had not stated a claim for relief. Mr. Crumley was invited to convince the Court otherwise and to present his

---

[5] With leave of Court, defendants submitted a sur-reply addressing matters raised for the first time in Mr. Crumley's reply papers. *See* Dkt. Nos. 54, 57.

best arguments as to why he should be allowed to file an SAC. Mr. Crumley's counsel, however, said he was not involved in the filing of the present motion papers and that he had no arguments to present.

Upon consideration of the moving and responding papers, as well as the oral arguments presented, and for the reasons discussed below, the Court denies Mr. Crumley's motion for leave to file an SAC.

**I. BACKGROUND**

The facts alleged in the proposed SAC, which are largely unchanged from those alleged in Mr. Crumley's FAC, are as follows:

Mr. Crumley purchased the Property sometime in 2002 and has used it as his primary residence since that time. Dkt. No. 24, SAC, ¶ 17.

In February 2004, Mr. Crumley obtained a home loan from Wells Fargo Home Mortgage, Inc. for $395,000, secured by the Property. SAC, ¶ 18, Ex. A.

In 2011, Mr. Crumley sustained injuries that prevented him from returning to work. SAC, ¶ 20. Foreseeing that he would have difficulty making his monthly mortgage payments (which had ballooned from $1,876.00 to $3,524.00), Mr. Crumley contacted Wells Fargo in the fall of 2011 to ask for assistance with his mortgage and about options for avoiding foreclosure. *Id.*, ¶ 21. He was told that he was not eligible for assistance because he was not behind in his payments. *Id.*, ¶ 22.

Mr. Crumley managed to stay current in his mortgage payments until February 2012. At that time, he again contacted Wells Fargo to request a loan modification or other foreclosure prevention alternatives. Wells Fargo told him that he was not far enough behind in his payments to be eligible for relief and that he should contact them again when he had missed more payments. SAC, ¶ 23.

In May 2012, after missing several months of mortgage payments, Mr. Crumley contacted Wells Fargo to again ask for assistance. Around June 29, 2012, Wells Fargo sent him a letter identifying some foreclosure prevention options that might be available to him, along with an application to participate in some of those programs. Mr. Crumley says he promptly submitted an

1   application. SAC, ¶ 24.

2   Between June 29 and July 4, 2012, Wells Fargo sent Mr. Crumley a series of letters identifying several foreclosure prevention specialists that had been assigned to his loan: Shederian Walls, Lee Smith, and Andrea Williams. SAC, ¶ 25. Mr. Crumley alleges that since each letter identified a different individual, he was not given a clear point of contact regarding his loan. In any event, he claims that his "efforts to speak with any of the people identified in these letters was unavailing." *Id*.

On July 6, 2012, a Corporate Assignment of Deed of Trust was recorded on the Property, reflecting an assignment of the Deed of Trust from Wells Fargo Home Mortgage, Inc. to U.S. Bank. SAC, ¶ 19, Ex. B.

On July 10, 2012, Wells Fargo sent Mr. Crumley a letter advising that his application was denied and that his loan could not be modified because U.S. Bank declined to modify the mortgage. Mr. Crumley says he later learned that the reason U.S. Bank declined to modify his loan is because the loan had been securitized, but that the points of contact assigned to his account did not tell him about the securitization of his loan. SAC, ¶¶ 26, 51. Further, Mr. Crumley alleges, on information and belief, that "his loan had not been securitized when he first contacted Wells Fargo, and that Wells Fargo knew or should have known that Plaintiff's loan would have been eligible for a modification but for the assignment to U.S. Bank" and that "Wells Fargo knew or should have known that [his] loan was ineligible for modification back in 2011 when Plaintiff first requested a modification." *Id*. ¶¶ 26, 27. As a result, Mr. Crumley claims that "Wells Fargo deprived [him] of the opportunity to seek other means to avoid foreclosure, such as selling his home, or refinancing his loan." *Id.,* ¶ 27.

Additionally, Mr. Crumley alleges that he relied on Wells Fargo's representations that he would not be eligible for a modification until he was sufficiently behind on his payments. As a result, Mr. Crumley says that he fell far behind on his mortgage and lost all the equity he had in the Property. SAC, ¶ 28.

In September 2012, Mr. Crumley filed for Chapter 13 bankruptcy in order to avoid losing his home. SAC, ¶ 29. During those proceedings, he says he "remained current on his mortgage

5

obligations, which ranged between $1,200-$1,600." *Id*.

Several years later, in April 2016, plaintiff submitted to Wells Fargo a second loan modification application, which was denied in November 2016. SAC, ¶ 32. Mr. Crumley alleges that the denial was made on "several inaccurate grounds, including, *inter alia*, that Plaintiff had too much equity in his home and an inaccurate analysis of the net present value of the Subject Property." *Id*.

Mr. Crumley's bankruptcy was discharged in February 2017. SAC, ¶ 29. He subsequently contacted Wells Fargo to request a loan modification, as well as a single point of contact for his account, but was again told that he was ineligible because he was not behind on his payments. *Id*., ¶ 30.

Mr. Crumley further alleges that he consistently told Wells Fargo that he wanted to keep his home and that Wells Fargo allegedly provided false assurances that the home would not be sold. Mr. Crumley claims that in phone conversations, which he believes Wells Fargo recorded, Wells Fargo employees told him that he would be approved for a loan modification. SAC, ¶ 33.

On May 17, 2017, QLS recorded a Notice of Default. SAC, ¶ 31, Ex. C.

On August 17, 2017, QLS recorded a Notice of Trustee's Sale, setting a sale date of September 19, 2017. SAC, ¶ 35, Ex. D. Shortly before the scheduled sale, Mr. Crumley says he spoke with Wells Fargo (in a conversation that he believes Wells Fargo recorded) and said that he wanted to keep his home. Wells Fargo told him that "his application was being denied" and that the foreclosure sale date would not be continued. SAC, ¶ 34.

Further, Mr. Crumley alleges that despite his requests for assistance, he was "not provided a 'case manager' in compliance with California [Civil] Code § 2923.7 at any point after January 1, 2013 and to this date." SAC, ¶ 36. He goes on to allege that "[t]he single point of contact provided by Defendants, if any, was either not willing to, or not provided with the ability to actually help Plaintiff, which is tantamount to not having a single point of contact." *Id*. ¶ 37. Mr. Crumley further claims that he was never given a single point of contact that performed duties required by California law. *Id*. ¶ 38. As a result, Mr. Crumley says he suffered damages, including "back dues and interest that has accrued to date, the loss of a permanent modification,

6

1  the loss of the opportunity to pursue other foreclosure prevention options, the loss of the

2  reinstatement amount he paid which included late fees and interest, [and] the cost and expense of

3  the instant pending litigation . . . ." *Id.* ¶ 39.

## II. LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure governs motions for leave to amend and provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend under Rule 15(a) is committed to the sound discretion of the trial court. *See Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). Leave need not be granted, however, where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Nevertheless, dismissal without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment, including a plaintiff's "'repeated failure to cure deficiencies by amendments previously allowed . . . .'" *Id.* (quoting *Foman*, 371 U.S. at 182).

Defendants oppose Mr. Crumley's motion on the ground that his proposed amendment would be futile. "Under futility analysis, '[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.'" *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quoting *Krainski v. Nevada ex rel. Bd. of Regents of NV. System of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010)). "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id.* (internal quotations and citation omitted).

## III. DISCUSSION

### A. Proposed Claims Nos. 1-2: HBOR, Cal. Civ. Code § 2923.7 and § 2924.12

In his SAC, Mr. Crumley seeks to reassert his claims under HBOR, Cal. Civ. Code § 2923.7 and § 2924.12. HBOR § 2923.7 provides, in relevant part: "Upon request from a

7

borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). HBOR § 2924.12 provides a private right of action and remedies for material violations of HBOR, including § 2923.7. The viability of the proposed claim under HBOR § 2924.12 therefore depends on the viability of the one under § 2923.7.

The theme of Mr. Crumley's motion for leave to file his SAC is that defendants will not be prejudiced by the amendment and that his proposed claims are meritorious. He did not, however, address any specific claim in his opening motion.

Defendants contend that the § 2923.7 claim is not viable for two main reasons. First, they argue that the claim is barred by a three-year limitations period, citing *Davis v. U.S. Bancorp*, No. 5:15-cv-02337-PSG, 2015 WL 5676022, at *2 (N.D. Cal., Sept. 28, 2015) ("California law imposes a three-year statute of limitations for causes of action created by statute.") (citing Cal. Code Civ. Proc. § 338(a)). Because the present lawsuit was not filed until November 2017, defendants argue that Mr. Crumley's § 2923.7 claim is too late to the extent it is based on conduct that occurred before November 2014.

Second, as discussed during the hearing on their motion to dismiss Mr. Crumley's FAC, defendants again point out that HBOR took effect on January 1, 2013, *after* Mr. Crumley's alleged first contact in 2011 with the specialists Wells Fargo assigned to his case and his subsequent communications in 2012. SAC, ¶¶ 21-27. As noted, Mr. Crumley previously acknowledged that HBOR took effect on January 1, 2013 and does not apply retroactively and, further, that his allegations concerning pre-January 1, 2013 conduct do not support a § 2923.7 claim. Dkt. No. 46 at 8:25-28. Yet the SAC's allegations regarding Mr. Crumley's § 2923.7 claim remain largely unchanged from those asserted in his FAC.

Even assuming Mr. Crumley could overcome those two hurdles, defendants argue that, for a number of other reasons, the proposed SAC still fails to allege sufficient facts to support a plausible claim for relief under § 2923.7. For example, defendants argue that Mr. Crumley's allegations are inconsistent to the extent they are based on the denials of his loan modification

8

applications due to the securitization of his loan. The SAC alleges that Wells Fargo "knew or should have known that Plaintiff's loan was ineligible for modification back in 2011 when Plaintiff first requested a modification." SAC, ¶ 27. However, Mr. Crumley also alleges that "his loan had not been securitized when he first contacted Wells Fargo . . . ." *Id.*, ¶ 26. Thus, it is unclear why Wells Fargo should have known in 2011 that his modification application would be denied due to the securitization of his loan.

Additionally, defendants contend that other problems in Mr. Crumley's pleading persist: The SAC continues to allege that the denial of Mr. Crumley's April 2016 loan modification application was improper because it was based "on several inaccurate grounds, including, *inter alia*, that Plaintiff had too much equity in his home, and an inaccurate analysis of the net present value of the Subject Property." SAC, ¶ 32. In the Court's order on Wells Fargo's motion to dismiss the FAC, the Court agreed that Mr. Crumley failed to state any facts supporting these allegations. Dkt. No. 46 at 8:1-5. No additional facts are stated in his proposed SAC. Further, defendants argue that the SAC fails to provide any context for allegations that Mr. Crumley received "false assurances that his house would not be sold" or that Wells Fargo "represented to Plaintiff that his application would be approved." SAC, ¶ 33. And, while the SAC alleges that Mr. Crumley requested a single point of contact after his bankruptcy was discharged in February 2017, defendants argue that he never clearly alleges that no single point of contact was established after that request allegedly was made. Indeed, the SAC, like the FAC, offers only the highly conclusory allegation that Mr. Crumley was not provided a "'case manager' in compliance with California [Civil] Code § 2923.7 at any point after January 1, 2013 and to this date." SAC, ¶ 36.[6]

With respect to allegations that Wells Fargo representatives told Mr. Crumley that he was not eligible for a loan modification review unless he was in default, defendants argue that those allegations merely reflect the requirements for a loan modification and do not constitute a failure to perform the requirements set out in § 2923.7. As for the allegation that Mr. Crumley's efforts

---

[6] Moreover, Mr. Crumley previously told the Court that the focus of his § 2923.7 claim was not that only one individual should have been assigned as a single point of contact, but rather that the services required under the statute were not provided. Dkt. No. 46 at 8:6-9.

9

1  to speak with his assigned representative was "unavailing" (SAC, ¶ 25), defendants contend that in context, the SAC's allegations suggest that "unavailing" simply means that Mr. Crumley did not receive a loan modification. These latter arguments are less convincing than the earlier ones, because they depend largely on inferences to be drawn from the facts alleged.

Even so, Mr. Crumley did not bother to address *any* of defendants' arguments. Indeed, although the introduction to his reply brief continues to assert that defendants violated the HBOR, Mr. Crumley does not address the HBOR claims at all. Instead, for the first time in his reply, he argues that he has viable claims under RESPA and indicates that he intends to dismiss his state claims. Dkt. No. 49 at 3:1-2. The Court will separately address Mr. Crumley's RESPA arguments, below. With respect to his proposed HBOR claims, however, Mr. Crumley has given this Court no basis to permit the filing of an SAC that includes those claims. Accordingly, Mr. Crumley's motion for leave to file an SAC is denied as to the proposed claims under HBOR, Cal. Civ. Code § 2923.7 and § 2924.12.

### B. Proposed Claim No. 4: Accounting Errors

This claim alleges that defendants misrepresented the status of Mr. Crumley's mortgage debt. According to the proposed SAC, Mr. Crumley's "credit files from Transunion and Equifax show 100% on time payments on all of his accounts, stating them as current," and defendants "report[ed] to all three credit bureaus that the [home mortgage] loan is current and paid in full." SAC, ¶¶ 66, 68 & Ex. E. Nevertheless, Mr. Crumley says that defendants continued to "send billing statements to Plaintiff claiming he has $150,000.00 in arrearages." *Id*. ¶ 68. Mr. Crumley thus appears to complain that defendants falsely reported to credit bureaus that he was current on his mortgage payments when he actually was not. However, it is unclear what the alleged accounting errors were, when they happened, and why that constitutes a claim for relief.

Additionally, the SAC alleges that "in determining Plaintiff's equity in the home, Defendants incorrectly took account of, assessed, and documented an incorrect amount" and "also made an incorrect assessment of the present market value of the subject property." SAC, ¶¶ 69-70. Mr. Crumley says he "does not know the full extent of his damages but believes the total damages from all causes alleged above exceeds the jurisdictional amount and is increasing each

10

day." *Id*. ¶ 71. These allegations are just as conclusory, if not more so, than similar allegations in the FAC that this Court found insufficient to support a plausible claim for relief. Dkt. No. 46 at 8.

In his reply brief, Mr. Crumley makes the additional assertion that "[w]hen [his] Bankruptcy ended, he was still behind on his payments and <u>approached Defendants seeking a loan modification on or about January of 2017</u>." Dkt. No. 49 at 4:23-25 (emphasis in original). Defendants allegedly told him that his account was in arrears, but that they "<u>could not do anything because there were no late payments</u>." *Id*. at 4:26-27 (emphasis in original). Mr. Crumley says that, at that time, he was still making payments, albeit in smaller increments of about $200 per month. *Id*. at 4:28. These assertions appear nowhere in the proposed SAC. Even if they did, it is still unclear how they support a plausible claim for accounting errors. As discussed above, although Mr. Crumley was given an opportunity at oral argument to tell the Court how and why his proposed SAC states a claim for relief, he was unable to provide any explanation.

Accordingly, Mr. Crumley's motion to file an SAC to include a claim for accounting errors is denied.

### C. Proposed Claim No. 5: Fraud/Intentional Misrepresentation[7]

To state a claim for fraud under California law, a plaintiff must allege: (1) a misrepresentation (false representation, concealment, or non-disclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Lazar v. Super. Ct.*, 909 P.2d 981, 984 (Cal. 1996). Additionally, a claim for fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Mr. Crumley's fraud/intentional misrepresentation claim is based, in part, on the same allegations about false reports to credit bureaus that Mr. Crumley was current in his mortgage payments when he actually was not. Not only are the proposed SAC's allegations vague with respect to the circumstances constituting fraud, it is unclear from the facts asserted how the alleged

---

[7] The proposed SAC indicates that this claim is brought under California Civil Code § 1710.2. That statute, however, governs disclosures regarding an occupant of property afflicted with or who died from AIDS, and therefore has no apparent relevance to the present matter.

11

false reports to credit bureaus constitute a plausible claim for relief as to Mr. Crumley. Other allegations in the SAC indicate he was well aware that he was in default on his loan. *See, e.g.*, SAC ¶ 28. Thus, the allegations regarding his fraud claim do not plausibly support the notion that Mr. Crumley could have been deceived by the alleged false credit reports, defendants' billing statements, or defendants' alleged statements that he could not get a loan modification because he was current on his loan.

Mr. Crumley's fraud/intentional misrepresentation claim is also based on allegations that Wells Fargo remains the beneficiary on the Deed of Trust, even though it purported to transfer the interest and rights in the Deed of Trust to U.S. Bank on July 6, 1012. Here, the SAC alleges that "Wells Fargo continues to pay the escrow impound charges for the home owners' insurance of subject property," and that Mr. Crumley "has documentation that is the invoice of the home owner's insurance that insures the subject property, and the beneficiary designated on the policy is Wells Fargo, not US Bank." SAC, ¶¶ 77, 79. In this way, Mr. Crumley says that "Defendants are ultimately playing a 'shell game' to hide behind and create a 'mortgage backed security' with an investor that does not allow loan modifications." *Id*. at ¶ 78. The documents appended to the proposed SAC, however, reflect that there is no basis for a claim.

The Corporate Assignment of Deed of Trust, appended to the proposed SAC as Exhibit B, says that Wells Fargo "grants, assigns, and transfers" to U.S. Bank "all beneficial interest under that certain Deed of Trust dated 02/10/2004, in the amount of $395,000, executed by KEVIN A. CRUMLEY, A SINGLE PERSON, to WELLS FARGO HOME MORTGAGE, INCORPORATED . . .." Dkt. No. 47-1 at ECF p. 44. Further, as defendants pointed out in their motion to dismiss the original complaint (Dkt. No. 9 at 6:7-24), paragraph 20 of the Deed of Trust provides, in relevant part:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**
> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of

12

> the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. ***If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser***.

Dkt. No. 47-1 at ECF pp. 34-35 (emphasis added). These documents suggest that the beneficial interest in the Deed of Trust was transferred to U.S. Bank without a transfer of the servicing rights. In view of these documents, the Court cannot discern from the SAC's allegations any misrepresentation that plausibly could form the basis for a fraud claim.

In his reply, Mr. Crumley does not respond to these arguments. Instead, he asserts for the first time that he was led astray by representations he received about a loan modification. Dkt. No. 49 at 4-6. However, those allegations are not in the proposed SAC, but in a declaration of counsel that the Court has already stricken. Additionally, Mr. Crumley's reply assertions are contradictory. For example, he says that defendants lulled him into a false sense of complacency to keep him from acting to avoid foreclosure. *Id.* at 5. Other assertions, however, state that defendants falsely represented that foreclosure was imminent and that they could not provide him with a loan modification for that reason, even though no notice of trustee sale had been recorded and there actually was no active sale date. *Id.* Moreover, Mr. Crumley's assertions, whether they appear in the proposed SAC or his reply, are vague as to "the who, what, when, where, and how of the misconduct charged" required for fraud claims. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citation omitted). When asked at the motion hearing whether he could allege specific facts as to what was said, by whom, when, and why it constitutes misconduct, Mr. Crumley merely reiterated the SAC's allegations regarding the alleged false credit reports and defendants' purported statements that he could not get a loan modification because he was current on his payments, even though defendants' statements showed that he was hundreds of thousands of dollars behind on his mortgage.

The Court finds no basis to permit the filing of an SAC to include a claim for fraud/intentional misrepresentation. Mr. Crumley's motion for leave to do so therefore is denied.

13

### D. Proposed Claim No. 6: Negligent Misrepresentation

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 226 Cal. Rptr. 532, 537 (Cal. Ct. App. 1986). To the extent negligent misrepresentation is considered a species of fraud, his complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Gilmore v. Wells Fargo Bank, N.A*, 75 F. Supp.3d 1255, 1270 (N.D. Cal. 2014) ("The Court agrees with the line of cases that hold that negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b).") However, even if Mr. Crumley were not required to plead this claim with particularity, he must still allege facts that support a plausible claim for relief.

This claim is based, in part, on the same allegations about (1) false reports to credit bureaus that Mr. Crumley was current in his mortgage payments when he actually was not and (2) Wells Fargo's alleged deceit in misleading Mr. Crumley about U.S. Bank's status as the beneficiary of the Deed of Trust. For the reasons discussed above, those allegations do not support a plausible claim for relief.

This claim is also based on other allegations that defendants led Mr. Crumley to believe that he would be eligible for a loan modification if he were far enough behind on his payments, even though they knew or should have known that he would not be eligible for a modification. However, the proposed SAC's allegations are contradictory. Here, Mr. Crumley reiterates that "Wells Fargo knew or should have known that Plaintiff's loan was ineligible for modification back in 2011 when Plaintiff first requested a modification" due to the securitization of his loan. SAC ¶¶ 87-88. However, he alleges elsewhere in the proposed SAC that "his loan had not been securitized when he first contacted Wells Fargo . . .." *Id*., ¶ 26. The proposed SAC goes on to allege that he was deceived into missing his mortgage payments in the belief that doing so would make him eligible for a loan modification. However, the SAC says that Mr. Crumley "continued

14

to make mortgage payments until he was completely unable to do so" (SAC, ¶ 89), and otherwise "remained current on his mortgage obligations" by making smaller payments on a payment schedule during his bankruptcy (*Id*. ¶ 90). As discussed above, these allegations also do not support a plausible claim for relief.

Finding no basis to permit an SAC to include a claim for negligent misrepresentation, the Court denies Mr. Crumley's motion for leave to do so.

### E. Newly Asserted RESPA Allegations

As discussed above, for the first time in his reply papers, Mr. Crumley argues that (1) he has a viable claim for relief under various RESPA provisions and regulations; and (2) those alleged RESPA violations provide sufficient basis to support a claim for violation of Cal. Bus. & Prof. Code § 17200. Specifically, Mr. Crumley contends he has a claim for relief for violation of 12 C.F.R. § 1024.41(d),[8] as well as for violation of 12 C.F.R. §§ 1024.33(b)(1)-(4) and 1024.33(c). As discussed above, Mr. Crumley never raised RESPA in his opening motion or in his proposed SAC, and RESPA is not one of the claims he was permitted to seek to include in an amended pleading. Even if these claims properly were before the Court, for the reasons discussed below, the Court concludes that Mr. Crumley has not demonstrated that he has a viable claim for relief.

#### 1. 12 C.F.R. § 1024.41

"On January 10, 2014, new regulations went into effect through the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010. Pub.L. No. 111–203, 124 Stat. 1376 (July 21, 2010) ('Dodd–Frank Act')." *Guccione v. JPMorgan Chase Bank, N.A.*, No. 3:14-cv-04587-LB, 2015 WL 1968114, at *8 (N.D. Cal., May 1, 2015). These regulations, referred to as "Regulation X," were promulgated pursuant to RESPA and are codified at 12 C.F.R. § 1024. *Id*. Regulation X imposes certain obligations on loan servicers in evaluating a borrower's loan modification request. Borrowers may enforce the provisions of 12 C.F.R. § 1024.41 pursuant to the provisions of Section 6(f) of RESPA, 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a).

---

[8] Mr. Crumley sometimes mistakenly refers to this section as 12 C.F.R. § 1021.41(d).

15

Mr. Crumley argues that defendants violated § 1024.41(d), which provides:

> Denial of loan modification options. If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. § 1024.41(d). Here, Mr. Crumley says that defendants did not provide him with a writing "to give him a rundown of his rights under the law" or "to explain what Net Present Value (NPV) means, or how that value yielded a denial of his loan modification application." Dkt. 49 at 3:13-16.

Defendants argue that it would be futile to permit the filing of an SAC that includes such a claim. First, they contend while the SAC alleges that Mr. Crumley was first denied a loan modification in July 2012 (SAC ¶ 26), Wells Fargo was not required to comply with § 1024.41 in connection with a loan modification application that preceded the effective date of Regulation X. Indeed, as noted, Regulation X did not go into effect until January 2014. *Guccione*, 2015 WL 1968114, at *8. Courts have found that § 1024.41 does not apply retroactively to loan modification applications that pre-dated the regulation's effective date. *See, e.g., Hackett v. Wells Fargo Bank, N.A.*, No. 2:17-cv-7354-CAS(ASx), 2018 WL 1224410, at *6-7 (C.D. Cal., Mar. 5, 2018) (observing "that section 1024.41 contains no express language evincing an intent that its requirements should apply retroactively to transactions prior to January 2014.") (citing cases).

With respect to allegations that Mr. Crumley's April 2016 modification application was denied based on "several inaccurate grounds, including, *inter alia*, that Plaintiff had too much equity in his home, and an inaccurate analysis of the net present value of the Subject Property," (SAC, ¶ 32), defendants reiterate that these allegations, which are largely unchanged from Mr. Crumley's FAC, are unsupported by any facts. In any event, these allegations undermine any alleged violation of § 1024.41(d) because Mr. Crumley would have no basis to challenge the accuracy of the reasons for the denial of his application, unless he had already received an explanation.

While the proposed SAC also alleges that sometime after February 2017, Mr. Crumley

16

"contacted Wells Fargo to specifically request a modification" (SAC ¶ 30), defendants contend that the SAC does not clearly allege that Mr. Crumley actually submitted another loan modification application, or that defendants failed to provide him with reasons for denying it. In any event, defendants contend that under 12 C.F.R. § 1024.41(i), a servicer is only required to comply with Regulation X as to the borrower's first complete application. *See, e.g., Thomas v. Wells Fargo Bank, N.A.*, No. 3:15-cv-02344-GPC-JMA, 2017 WL 3877739, at *4 (S.D. Cal., Sept. 4, 2017) (concluding that where the plaintiffs submitted at least one complete loan modification application, and the defendant gave plaintiffs notice of the denial of their application, the defendant had no obligation to comply with § 1024.41 for any subsequent complete loss mitigation application); *Cruz v. Select Portfolio Servicing, Inc.*, No. EDCV 15-2458-JGB-KKx, 2016 WL 7496762, at *4 (C.D. Cal., Feb. 4, 2016) (observing that 12 C.F.R. § 1024.41(i) "expressly limits the application of Section 1024.41 to a single loss mitigation application . . . .").

As discussed above, although he was given an opportunity at the motion hearing to explain why he has a viable claim under 12 C.F.R. § 1024.41, Mr. Crumley offered no rejoinder to these arguments. Accordingly, his request for permission to include this claim in an SAC is denied.

### 2. 12 C.F.R. § 1024.33

This regulation pertains to mortgage servicing transfers. Mr. Crumley says that defendants violated 12 C.F.R. § 1024.33(b)(1)-(4), which provides that "each transferor servicer and transferee servicer of any mortgage loan shall provide to the borrower a notice of transfer for any assignment, sale, or transfer of the servicing of the mortgage loan," and sets out the requirements for such notice. He also asserts that defendants violated 12 C.F.R. § 1024.33(c), which provides that for a sixty-day period beginning on the date of the effective transfer of service, if a borrower sends his payment to the transferor, rather than the transferee who properly should receive payment, the borrower will not be charged a late fee. 12 C.F.R. § 1024.33(c)(1); *see also* RESPA, 12 U.S.C. § 2605(d).

Mr. Crumley now suggests that he never received notice of the transfer of his loan and indebtedness and, as a result, he "was unclear where to tender payment, as there had been <u>various assignments without notice throughout the life of the loan</u>." Dkt. No. 49 at 4:6-12 (emphasis in

17

original).

Defendants argue that Mr. Crumley's assertions are not only unsupported by any of his previous complaints, they are also contradicted by his prior pleadings. First, like the original complaint and the FAC, the proposed SAC appends a copy of the Corporate Assignment of Deed of Trust, indicating that Wells Fargo transferred the beneficial interest in his loan to U.S. Bank. SAC, ¶ 19, Ex. B. The SAC further alleges that this document "purports to memorialize the assignment of the [Deed of Trust] from Wells Fargo Home Mortgage, Inc. to . . . Defendant U.S. Bank." *Id*. ¶ 19. Moreover, defendants correctly note that Mr. Crumley has never alleged that the note was assigned at any other point in time. Nor has he even suggested that there is any other lender in this action, which has always been maintained against only Wells Fargo and U.S. Bank.

Mr. Crumley having offered no rejoinder to defendants' arguments, his request for permission to include this claim in an SAC is denied.

### F. Proposed Claim No. 3: Cal. Bus. & Prof. Code § 17200

The Court having denied Mr. Crumley's motion for leave to file any predicate claims in an SAC, his § 17200 claim also fails. *See Pantoja v. Countrywide Homs Loans, Inc.*, 640 F. Supp.2d 1177, 1190 (N.D. Cal. 2009) (concluding that the plaintiff could not state a claim under Cal. Bus. & Prof. Code § 17200 or § 17500 because the court dismissed "all of [his] predicate violations").

## IV. CONCLUSION

Based on the foregoing, Mr. Crumley's motion for leave to file an SAC is denied. The Court having previously dismissed all of Mr. Crumley's claims for failure to state a claim for relief, and in view of Mr. Crumley's repeated failure to cure deficiencies by amendments previously allowed, this action is now dismissed with prejudice. The Clerk of Court shall enter judgment and close this file.

**IT IS SO ORDERED.**

Dated: September 7, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge